Vernon WOOD and Mary Wood,
Appellants,

v.

David E. ALM et al., Appellees.

David E. ALM et al., Cross-Appellants,

v.

Vernon WOOD and Mary Wood,
Cross-Appellees.

Nos. 1686, 1687.

Supreme Court of Alaska.

Dec. 3, 1973.

M. Ashley Dickerson, of M. Ashley Dickerson, Inc., Anchorage, for appellants and cross-appellees.

Kenneth R. Atkinson, of Atkinson, Conway, Young, Bell & Gagnon, Anchorage, for appellees and cross-appellants.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

ERWIN, Justice.

On November 18, 1968, appellants filed a complaint against appellees Alm, Campbell Lake, Inc. and Campbell Lake Development Corp., requesting injunctive relief and damages. The complaint alleged that the appellants were the owners of certain real estate, a portion of which was covered by the waters of Campbell Lake, an artificial lake created and maintained by appellees by damming the waters of Campbell Creek. The injunctive relief requested in the complaint involved the appellants' right to use of the lake, their use of a road leading to the lake, and abatement of a nuisance on the real estate of the appellants caused by the waters of the lake.

The complaint also requested damages against the appellees in the amount of $200,000 for "inconveniences and deprivations" suffered by the appellants through the years by reason of acts of the appellees. In addition, the appellants asked for $100,000 actual and $100,000 exemplary damages for the breach of a contract between them. The Woods alleged that in the latter part of 1957 they promised not to interfere with the plan to flood this area in return for the promise of the appellees to protect their right to conduct an airplane parking and airplane repair business on the new lake, and that appellees would not compete with the Woods by using the lake for that purpose. The alleged breach of agreement occurred in 1968 when appellees sought and obtained a rezoning of the area which would prohibit the use of the appellants' land for the business contemplated.

In October 1970 the Woods filed an amended complaint adding the Greater Anchorage Area Borough as a party defendant. The relief sought against the defendant Borough was to enjoin the Borough from deviating from a sewer plan, assessing the appellants' land for a sewer and to set aside an order vacating a segment of Noblewood Street which abutted the Wood property.

The appellees, Alm and the two corporations in which he was the majority shareholder, filed an answer denying all material allegations of the complaint and pleaded as affirmative defenses that the tort and breach of contract damage claims were barred by statute of limitations. They also asserted that damages, if any, to the real estate of the appellants were caused by independent intervening causes over which they had no control.

The Greater Anchorage Area Borough filed a motion to dismiss the appellants' complaint against it, or alternatively to restrict the scope of the proceedings to a review of the record. Subsequently, the trial judge dismissed the Borough as a defendant after the Borough stipulated that it had no authority, nor had it purported, to extinguish private rights in Campbell Lake or private rights in the segment of Noblewood Street vacated by the Borough Planning Commission on November 13, 1968. No appeal was taken by the appellants from the action dismissing the defendant Borough.

At the trial of this action Vernon Wood testified that he did not intend to start his aircraft repair business at Campbell Lake until the spring of 1973, when he retired from his present job. He testified that the contract with the appellees regarding establishment of a business by the appellants was made in 1957, and that he had not told the appellees that the business contemplated was not to be started until the spring of 1973. He testified that the agreement with the appellees placed no time limitation on starting the contemplated business.

At the close of the appellants' case the appellees moved for a directed verdict against the contract claim of the appellants on the grounds that there could be no breach of a contract for which the time of performance by the appellees had not yet arisen. The trial judge ruled that the question of breach of contract damages was not to be submitted to the jury, but by Special Interrogatory No. 4 the question of the existence of a contract between the ap-

pellants and the appellees was sent to the jury.

A trial was had which lasted approximately seven days, with the jury viewing the premises. Testimony revealed that initially, as the lake was developed, the parties contemplated a seaplane base similar to that now existing at Spenard Lake, but that this was abandoned when it was decided that the best use of the land around the lake was as residential property.

When the water level of the lake rose, after the dam was built, the land belonging to the Woods was partially flooded. This partial flooding occurred as a result of water seeping around an earthen dike which was erected on the lower part of the Wood property by the appellees to hold back the water. The portion of the Woods' land flooded has increased with erosion of the bank.

Mr. Wood testified that he agreed to the construction of the lake initially, but that he had not agreed to the progressive flooding of his land.

There was a fracture of the creek channel during the 1964 earthquake which caused the dam to drain and lowered the level of the lake. Shortly thereafter work was done on the Wood property in an attempt to make the dike higher to avoid further flooding of the property, but there were difficulties because of the boggy condition of the land, and the attempts to make the dike higher were discontinued.

In 1965 the lake was drained to permit the laying of a sewer across the lake. Heavy equipment from the sewer contractor was permitted on the Wood property pursuant to a written easement.

On January 19, 1972, the trial judge entered a judgment consistent with the jury's answers to three of the four interrogatories [1] and Verdict No. 1, which found the flood damages claimed were barred by the statute of limitations and that the Woods had failed to establish any adverse use of Noblewood Street. The judgment also awarded the appellees $348.00 as costs and $3,300.00 attorney's fees. The judgment on jury verdict also provided that the issue of breach, if any, of the contract found to exist between the appellants and the appellees be tried to a separate jury during or after the spring of 1973.

On June 12, 1972, the trial judge disposed of the equitable issues in the litigation by a memorandum decision. Appellees were ordered to abate a continuing nuisance, consisting of the flooded, boggy condition existing on the flooded portion of appellants' land, by filling a portion of the boggy area with soil so as to provide the appellants access across their land to Campbell Lake and to avoid the problems of greater inundation of the Wood land. The trial judge also awarded plaintiffs $1,000.00 in attorney's fees in the memorandum decision. This appeal and cross-appeal followed.

1. The interrogatories and their answers were as follows:
1. Did plaintiffs, for a period of ten years prior to the filing of action on November 18, 1968, use the road, known as Noblewood Road continuously, openly, notoriously and adversely to defendants, independent of a right of use by the public generally?
   Yes _____
   No    X
2. Did defendants by any acts or omissions on their part after November 18, 1962, cause damage to plaintiffs by flooding a portion of plaintiffs' land?
   Yes _____
   No    X

3. If your answer to question number 2 is Yes, please insert the amount of damages you find were caused to the plaintiffs during the period covered.
   $_____
4. Did defendants, or anyone acting pursuant to defendants' authority agree that, if plaintiffs would permit damming the waters of Campbell Creek so as to affect plaintiffs' land to create the lake, plaintiffs would enjoy the right, without competition from defendants, to maintain an airplane- maintenance business?
   Yes    X
   No _____

## I.  WOOD APPEAL

The major issue before this court is the Woods' contention that they were entitled to bring a lawsuit and have a determination of damage on the question of breach of contract, and that the postponement of this suit until after the spring of 1973 was error.  The new R–1 zoning for the area now prevents any business use of the Wood property while the original agreement entered into in 1958 permitted this business use.  Wood claims there was an anticipatory breach of that agreement in 1968 when the restrictive zoning occurred at the instigation of appellees.  The appellees answer this contention by asserting that since Wood testified that he had not planned to start business operations until 1973, his cause of action could not arise until that date.  They assert that the bilateral contract between them was completely performed on one side, and there could be no anticipatory repudiation of the contract until the time for the performance of the other party came due, in this case 1973.

■ There is a substantial question whether or not a person may bring suit for anticipatory breach under the facts of this case.[2]  However, the passage of time has made the choice of legal doctrines esoteric, for the time for performance has now in fact arrived.  The factual problem presented to the trial court is mooted and trial on the issue of breach of contract is warranted at this time, if the Woods so request.  If appellees solicited and helped secure a zoning change which now precludes the Woods from establishing an aircraft repair business on their property, after appellees had obtained agreement to the creation of Campbell Lake in consideration of the Woods' exclusive right to start such a business on the lake, then appellees have breached their agreement.

The Woods also object to the dismissal of the Greater Anchorage Area Borough as a party defendant.  The Borough was made a party defendant in the amended complaint herein based on two separate

theories.  Originally there was a problem with the sewer assessment for a trunk sewer in that area, but the sewer assessment issue was dismissed at the pre-trial conference and this dismissal is not urged as error.  The second claim raised the question of whether or not the Borough had properly vacated the roadway known as Noblewood Street, which ran from what is now Dimond Boulevard to the edge of Campbell Lake, abutting the property of the appellants Wood.

■ Appellants take the position that there are public rights in Noblewood Street which the Borough improperly destroyed by the passage of Ordinance 349, and that such rights affect the private action herein.  However, at a hearing on the issue of vacation of Noblewood Street in the superior court, the Borough agreed that they had no right to affect any private rights on Noblewood Street and that the following declaratory judgment be entered.

> Plaintiffs are granted a declaratory judgment that the Borough has no authority to extinguish private rights that may exist to Campbell Lake or to extinguish any private rights that may exist to that extension of Noblewood Street which was vacated by Greater Anchorage Area Borough Planning and Zoning Resolution 349.

This stipulated judgment was sent to the jury with Exhibit C, so that the jury was aware of the limitation.

Since the pleadings and evidence do not concern public rights, it is difficult to ascertain how any of the private rights sued for herein are affected.  Additionally, the appellees conceded at the trial that the Woods had a right to use the lake, to have access to the lake over their own property or other property adjacent thereto, and that no limitation could be placed by appellees on the Woods' private use and enjoyment of the lake in question.  Under these circumstances, there was no error in dismissing the Greater Anchorage Area Borough as a party to this cause of action.

2. *Compare* Restatement (Second) of Contracts § 277(1) (Tent. Draft No. 8, 1973) *with* 4A Corbin, Contracts § 962, at 864–865 (1951).

The Woods also assert that the court should have found flood damage as a matter of law and they should have been given a judgment notwithstanding the verdict. The basic problem with such an assertion is the fact that the statute of limitations had run so far as the 1958 injury to the Wood property was concerned, and thus the Woods could not recover for damage to their property as a result of the initial flooding of Campbell Lake.[3] There is agreement that flooding did occur in 1958 and that the earthen dike had eroded with time causing further flooding to the Wood property. There were two subsequent times when the lake was drained—in 1964 when the earthquake caused a huge fissure in the earth dam, and again in 1965 when there was sewer construction across Campbell Lake. The sewer construction on the Wood property was done pursuant to a written easement granted by the Woods and there were allegations and testimony that some of the damage was done at that time. Thus, a major problem in the case was determining injury to the land in 1958, then in 1964, and then in 1965. Since the jury could only take into account that damage which occurred after 1962, there is little doubt that the question of whether appellees were responsible for any damage after 1962 was a jury issue.[4]

Appellants assert further errors in the conduct of the trial, but we find them to be without merit. The decision of the trial court on these issues is affirmed.

## II. CROSS APPEAL

The appellees, on the other hand, cross-appeal and object strenuously to the finding by the trial court that their actions constituted nuisance which they were required to correct. The order entered by the judge after the jury trial herein is as follows:

3. It was conceded by all parties that there was no intent to flood the Wood land in 1958 and, in fact, a dike had been built to keep the water from going on the low portion of the Woods' property.

4. The trial court ruled that only damages to the Wood property which took place after

The court viewed the land and the manner in which the lake flooded it, although the lake was frozen at the time of the view. It was obvious to the court that the plaintiffs could have access to the lake over their land, if means of crossing the boggy, flooded portion could be afforded. From such view and from other evidence, I conclude that the flooded, boggy condition constituted continuing nuisance, not barred by laches. (citations omitted) The balancing of equities does not require, however, that defendants restore all of the land which has been flooded, but rather, restoration of reasonable access to plaintiffs. Mr. Alm's testimony that dragging up lake bottom material, and provided adequate drainage thereof, will provide such access is reasonable.

Defendants are enjoined to abate the nuisance herein declared to exist by dragging up sufficient soil material and providing drainage for the stabilization thereof by covering the same with gravel or other suitable material, within a reasonable time following entry of this order in order to provide access to plaintiffs and their family for the launching and mooring of small boats, and the use thereof of Campbell Lake. Such access must be of sufficient durability to accept the weight of small boat trailers and motor vehicles towing the same, in normal seasonable weather.

Appellees' basic contention is that the finding of nuisance [5] is inconsistent with the alleged findings of the jury that there was no damage suffered by the Woods because they had agreed to the flooding of their property in 1958. A reading of the interrogatories does not show that this was their basic import.[6] While the Woods did agree to the dam to create Campbell Lake, they did not agree to the flooding of their

1962 could be considered by the jury. This ruling was not appealed.

5. The nuisance alleged by the Woods is the flooding of their property so that they are obstructed and unable to use and enjoy such property in the usual manner.

6. See n. 1, *supra.*

property and, in fact, at that time, appellees had attempted to build the dike to keep their property from being flooded. While the Woods' claim for damages for 1958 is barred, it would not appear that this should bar their claim for nuisance where there was testimony that, in fact, more and more of their land is being flooded by virtue of water run-off and continual erosion of the dike by the action of the water.

■ There was sufficient factual basis for the judge to find that a private nuisance affecting the Woods' property exists.[7]

We find no merit in the other claims by the parties in this case. We vacate the judgment entered and remand the case for trial on the issues of breach of contract and any damages as a result thereof.

7. We note appellees' request that the trial court be ordered to make more specific its order requiring abatement of the nuisance. We, however, find the trial court the proper agency to administer the order made. While the record reflects hostility between the parties, the cost of abatement of the nuisance will be substantially increased unless appellees make a bona fide effort to comply with the court order. At the very least a written proposal submitted for court approval concerning the method of compliance with the court order would minimize actual expenses and provide a forum whereby the necessary cooperation of the principals can be assured.