**FEDERAL DEPOSIT INSURANCE COR-PORATION, as statutory successor to the Resolution Trust Corporation, in its capacity as Receiver for Sun Savings and Loan Association, Plaintiff,**

v.

**LAIDLAW TRANSIT, INC. d/b/a Laidlaw Transit (AK), Inc., Burton Carver & Co., K Beach Parts & Equipment, Peninsula Sanitation Co., Inc., Defendants.**

No. S–8540.

Supreme Court of Alaska.

April 12, 2001.

Joseph R.D. Loescher and Carl J.D. Bauman, Hughes, Thorsness, Powell, Huddleston & Bauman LLC, Anchorage, for Plaintiff.

Ann W. Resch and Richard L. Waller, Brown, Waller & Gibbs, Anchorage, for Defendant Peninsula Sanitation Company, Inc.

Nelson G. Page, Burr, Pease & Kurtz, Anchorage, for Defendant Laidlaw Transit Alaska, Inc.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

BRYNER, Justice.

## I. INTRODUCTION

The Federal Deposit Insurance Corporation (FDIC), as receiver of a failed bank's assets, acquired land that had been contaminated by hazardous waste many years previously. After undertaking voluntary cleanup at the request of the Alaska Department of Environmental Conservation, the FDIC filed suit in federal court against the former landowner and the owner's tenants, seeking to recoup its cleanup costs. FDIC claimed a right to compensation under AS 46.03.822, which imposes strict liability on a joint and several basis for release of hazardous substances and, in addition, allows responsible parties to sue for contribution.

Since this court had not yet determined whether section .822 creates a private cause of action other than for contribution or is governed by a statute of limitations, the federal district court certified these questions to us. We conclude that the statute allows private parties to sue directly for damages, not just for contribution, and that suits under the statute—both direct and for contribution—are governed by a statute of limitations.

## II. FACTS AND PROCEEDINGS

For purposes of this decision, we accept the facts alleged in FDIC's complaint. In May 1988 Sun Savings and Loan Association, F.A ., foreclosed on land that was owned by Burton Carver & Co. and that had been occupied by Carver and three tenants, Laidlaw Transit, K Beach Parts and Equipment, and Peninsula Sanitation Co. Carver and these tenants allegedly had contaminated the land by releasing various hazardous substances, including fuel oil.

In December 1989, a year and a half after Sun Savings foreclosed on the land, the Alaska Department of Environmental Conservation asked it to enter into a Compliance Order by Consent for the purpose of investigating and remediating contamination on the property. Not long after this, Sun Savings failed, and the Resolution Trust Corporation took over its assets. In July 1990 Resolution Trust wrote two of Carver's tenants—Peninsula Sanitation and Laidlaw—to inform them of the Department's action.

Nearly seven years later, in February 1997, FDIC, which by then had become the Resolution Trust Corporation's statutory successor, filed suit in federal district court against Laidlaw, K Beach Parts, Peninsula Sanitation, and Carver. FDIC alleged that these defendants were both strictly liable under AS 46.03.822(a) and liable in contribution under AS 46.03.822(j) for cleanup costs and other damages resulting from contamination of its land by their release of hazardous substances. FDIC alternatively alleged liability for the same damages under other theories, including continuing nuisance and trespass.

Peninsula moved for summary judgment, alleging that FDIC's claims are barred by AS 09.10.070(a), Alaska's statute of limitations for liability created by a statute. Finding that FDIC's complaint and Peninsula's summary judgment motion raised unresolved issues of Alaska law, the federal district court certified four questions for our review:

1. Is a statute of limitations defense available for a direct cause of action under AS 46.03.822(a)?

2. Does a private cause of action imposing joint and several liability exist under AS 46.03.822(a)?

3. When does a cause of action for contribution accrue under AS 46.03.822(j)?

4. Can continuing trespass and nuisance claims for environmental contamination be brought where the original act leading to the contamination occurred outside of the limitations period?

We accepted these questions under Alaska Appellate Rule 407 and answer them as follows.

## III. DISCUSSION

### A. Standard of Review

■ Under Appellate Rule 407, a decision by this court upon certification from another court necessarily involves determinative questions of Alaska law as to which there is no controlling precedent.[1] Because we address questions of law and essentially stand in the shoes of the certifying court, we must exercise our independent judgment.[2]

### B. Alaska Statute 46.03.822(a) Provides Private Plaintiffs with a Cause of Action for Strict Joint and Several Liability.

■ FDIC alleges that the defendants are subject to joint and several strict liability under AS 46.03.822(a), which provides that

"the owner and the operator of a ... facility, from which there is a release ... of a hazardous substance" are among those "strictly liable, jointly and severally, for damages, for the costs of response, containment, removal, or remedial action incurred by the state, a municipality, or a village...." The passive language of this provision does not specify whether a private party may sue for damages. But the legislative history of this provision and our case law dealing with the creation of statutory causes of action establish that it provides a private cause of action for the owner of private property damaged by a release.

### 1. The legislative history behind subsection .822(a) supports a private cause of action.

The original version of AS 46.03.822, enacted in 1972, created a cause of action imposing strict liability on polluters who damaged private property:

To the extent not otherwise preempted by federal law, a person owning or having control over a hazardous substance which enters in or upon the waters, surface or subsurface lands of the state is strictly liable, without regard to fault, *for the damages to persons or property,* public or *private,* caused by the entry....[3]

The act defined "damages" to include "injury to or loss of persons or property, real or personal, loss of income, loss of the means of producing income, or the loss of an economic benefit."[4] A separate provision, AS 46.03.870, specified that causes of action under AS 46.03 "inure solely to and are for the benefit of the state" "[e]xcept as provided under AS 46.03.822—46.03.828," implying that those sections provide for private causes of action.[5]

---

1. Appellate Rule 407(a) provides:

 The supreme court may answer questions of law certified to it by ... a United States district court ... when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

2. *See M.A. v. United States,* 951 P.2d 851, 853 (Alaska 1998).

3. Ch. 122, § 1, SLA 1972 (emphasis added).

4. *Id.*

In 1989 the legislature amended section .822 to "strengthen the State's ability to obtain cleanup of hazardous substance spill sites."[6] The amendments explicitly allowed the state and municipalities to recover damages, including cleanup and remediation costs, under the strict liability language of subsection .822(a):

> Notwithstanding any other provision or rule of law and subject only to the defenses set out in (b) of this section[,] ... *the following persons are strictly liable, jointly and severally, for damages to persons or property, whether public or private,* including damage to the natural resources of the state or a municipality, and for the costs of response, containment, removal, or remedial action incurred by the state or a municipality, resulting from an unpermitted release of a hazardous substance....
>
> ....
>
> (2) the owner and the operator of a vessel or facility from which there is a release ... of a hazardous substance[.] [7]

Legislative history indicates that this amendment was modeled after the Federal Comprehensive Environmental Response Compensation and Liability Act (CERCLA),[8] which Congress enacted in 1980.[9]

In 1991 the legislature passed a number of amendments to AS 46.03.822. First, it amended subsection .822(a) to add villages to the governmental entities that could recover cleanup and remediation costs.[10] In so doing, the legislature retained the "public or private" damages language quoted above.[11] Later in the same session, the legislature moved the damages language from subsection .822(a) to a new subsection, .822(k), but did not change its content.[12]

In each of the foregoing amendments, the legislature also retained AS 46.03.824, a provision defining damages to include injuries to persons or property, real or personal, and loss of income.[13] The legislature likewise retained the original version of AS 46.03.870, which, as mentioned above, specifically provides that causes of action under section .822 are not limited to the state. Moreover, every version of section .822 has subjected pollu-

---

5. Ch. 122, § 2, SLA 1972. Title 46, Chapter 3 includes AS 46.03.010–.900.

6. Position Paper, March 16, 1989, Dennis D. Kelso, Commissioner, Alaska Department of Environmental Conservation.

7. Ch. 39, § 2, SLA 1989 (emphasis added).

8. *See* 42 U.S.C. §§ 9601–9675 (1994).

9. The Department of Environmental Conservation stated in its position paper:

> The bill [CSHB 68 (Resources) ] was introduced at the request of the Governor. The Department strongly supports the bill and feels that it is necessary to provide appropriate tools to ensure that hazardous substance releases may be responded to properly. The first two sections of the law [including the re-enacted section .822] incorporate provisions similar to [those in] the federal "Superfund" law into state law.

> *See* Position Paper, March 16, 1989, Dennis D. Kelso, Commissioner, Alaska Department of Environmental Conservation.
> In addition, Senate Judiciary Chairwoman Jan Faiks explained that the 1989 amendments to AS 46.03.822 were modeled after CERCLA. *See* Committee Minutes, Senate Judiciary Committee (May 2, 1989).

10. *See* Ch. 83, § 9, SLA 1991.

11. *Id.*

12. *See* Ch. 92, §§ 1, 3, SLA 1991 (including "damage to persons or to public or private property [and] damage to natural resources of the state or a municipality" in subsection .822(k) among the harms that trigger strict liability, as section .822 has always done). The amendments contained in §§ 1 and 3 took effect July 3, 1991. In the same Act, these sections were to be repealed effective July 1, 1992, with the language in the new subsection (k) reverting to subsection (a). *See id.* at §§ 10, 12. However, this repeal and re-enactment was itself repealed in 1992. *See* Ch. 83, § 15, SLA 1992.

13. While the definition of damages does not expressly include cleanup costs outside the context of those incurred by the state, a municipality, or a village, other courts have held that damages include cleanup costs. *See, e.g., One Wheeler Road Assocs. v. Foxboro Co.,* 843 F.Supp. 792, 796–97 (D.Mass.1994) (applying Massachusetts law); *Borough of Rockaway v. Klockner & Klockner,* 811 F.Supp. 1039, 1051 (D.N.J.1993) (applying New Jersey law). The inclusion of cleanup costs in damages also furthers the legislative purpose of protecting the environment from pollution. *See Stock v. State,* 526 P.2d 3, 12 (Alaska 1974).

ters of either private or public property to joint and several strict liability.

In sum, this history strongly suggests that the legislature originally contemplated a private cause of action against parties who release hazardous substances and that it never repealed that cause of action. It would be incongruous for the legislature to create strict liability for damage to private land without providing a way for private parties to get compensation for that damage.

2. *Alaska Statute 46.03.822(a) necessarily implies a private cause of action under the Hendsch Analysis.*

In *Alaska Marine Pilots v. Hendsch,* we identified six factors as relevant to determine whether a statute implies a private cause of action in tort: "the nature of the legislative provision, the adequacy of existing remedies, the extent to which a tort action will interfere with existing remedies, the importance of the purpose of the provision, how drastically the new tort will change the law, and the burden the [cause of action] will place on the court system." [14]. Here, these factors support a private cause of action.

(1) *Nature of subsection .822(a):* Subsection .822(a) is easily amenable to individual enforcement. The prohibited conduct and the potential defendants are clearly identified by subsection .822(a), which attaches strict liability for the release of hazardous substances, and by subsection .822(k), which identifies damage to "persons or to public or private property" as a kind of damage covered by subsection .822(a).[15] An injured property owner who, like FDIC, identifies parties responsible for contaminating the property need only show that the parties owned or operated the facility causing the contamination.[16]

(2) *Adequacy of existing remedies:* When the legislature created a strict liability re-

gime for hazardous substance contamination, it expressed its judgment that negligence remedies were not adequately controlling the hazardous substance contamination problem. Nevertheless, Peninsula and Laidlaw insist that the subsection .822(j) right of contribution is an adequate remedy. We disagree. Under subsection .822(j), a damaged party can seek contribution only "during or after" an action against the party under subsection .822(a). Since private parties who voluntarily undertake cleanup efforts cannot compel the state to commence an action against them, they would be forced to wait for government action and, if no action were brought, would lose funds spent cleaning up another's contamination. That is not an adequate remedy. A more convincing reading of subsections .822(a) and (j) gives private parties the means to recover private damages, while allowing defendants a way to spread the costs of that recovery among the responsible parties.

(3) *Interference with existing remedies, and* (4) *importance of purpose of the provision:* A private cause of action under subsection .822(a) would not interfere with existing remedies, such as contribution claims; and it would enhance the important purposes of Alaska's contamination responsibility regime. As discussed above, allowing private parties to initiate cleanup while they bring an action against others who may be responsible—without waiting for government action—promotes the goal of quick response to discovered contamination. At the same time, actions for contribution allow the parties to sort out ultimate responsibility for the contamination afterwards.

(5) *Scope of change in the law:* Allowing a private cause of action under subsection .822(a) is not a departure from the way the law already operates in Alaska. In *Chenega Corp. v. Exxon Corp.,* for example, the par-

**14.** 950 P.2d 98, 104–05 (Alaska 1997) (citing Restatement (Second) of Torts § 874A cmt. h (1977)); *see also Walt v. State,* 751 P.2d 1345, 1351 n. 12 (Alaska 1988).

**15.** *See* AS 46.03.822(k) (" '[D]amages' has the meaning given in AS 46.03.824 and includes damage to persons or to public or private property, damage to the natural resources of the state

or a municipality, and [certain damages caused by cleanup contractors]."). AS 46.03.824 reads: "Damages include but are not limited to injury to or loss of persons or property, real or personal, loss of income, loss of the means of producing income, or the loss of an economic benefit."

**16.** *See* AS 46.03.822(a).

ties litigated a complex private strict liability claim under subsection .822(a) stemming from the EXXON VALDEZ disaster.[17] No party questioned that subsection .822(a) allowed the action, and Exxon ultimately conceded strict liability, contesting only causation and damages.[18]

(6) *Burden on the courts of creating a private action:* While allowing private parties to bring causes of action may increase the number of claims under subsection .822(a), it will be consistent with what the legislature intended. We do not see that as an undue burden on the courts.

Because subsection .822(a) meets all of the criteria for an implied cause of action under our *Hendsch* analysis, and since the legislative history of the provision supports the conclusion that the legislature meant to permit private actions, we hold that subsection .822(a) creates a private cause of action for joint and several strict liability. In the following section, we briefly consider the scope of this private action.

3. *The private cause of action created in subsection .822(a) extends to potentially responsible parties.*

■ In arguing that the only remedy available to FDIC is a subsection .822(j) action for contribution, the defendants place great weight on FDIC's status as a potentially responsible party. They contend that po-

tentially responsible parties should not be allowed joint and several recovery, but should be limited to contribution from other potentially responsible parties.

Any entity that may be required to take financial responsibility for cleaning up a contaminated site is a potentially responsible party. Alaska Statute 46.03.822(a)(3) imposes strict liability on the owners of a facility that releases hazardous material. Insofar as FDIC stands in the shoes of the owner of the contaminated property at the time of the release—allegedly Sun Savings—FDIC is a potentially responsible party and, as such, is theoretically subject to the same liability as those who caused the contamination.[19]

The defendants maintain that allowing one potentially responsible party to claim direct damages under subsection .822(a) from other potentially responsible parties would give the claimant an unfair advantage over the defending parties, because the claimant's joint and several recovery under subsection .822(a) might include compensation for damages caused by absentee or judgment-proof polluters; the claimant would then receive full compensation despite being a potentially responsible—and possibly culpable—party, whereas the defending parties might be left with a worthless claim for contribution under subsection .822(j). The defendants reason that, in these situations, cleanup costs should

---

**17.** 991 P.2d 769, 776 (Alaska 1999).

**18.** *See id.* Several Alaska superior courts have adopted similar approaches. *See University of Alaska v. Texaco,* No. 4FA–93–2486 CI (Alaska Super., November 14, 1995) (memorandum decision); *Parks Hiway Enters., LLC v. CEM Leasing, Inc.,* No. 4FA–95–2117 CI (Alaska Super., December 22, 1997) (memorandum and order granting defendant's motion for summary judgment).

**19.** We note in passing that FDIC's exact status is not clear. FDIC is the ultimate receiver of property owned by Carver that was pledged as security to Sun Savings. The defendants allege that FDIC is potentially responsible, but FDIC does not address the question. Under AS 46.03.826(8) "owner" and "operator" are defined to exclude a person who "without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect that person's security interest in the vessel or

facility." The federal district court's certified questions do not require us to interpret this provision or to determine whether FDIC is a potentially responsible party, and we decline to do so here. Nevertheless, we note that federal courts that have interpreted the CERCLA equivalent of this section are divided. *Compare United States v. Fleet Factors Corp.,* 901 F.2d 1550, 1557–58 (11th Cir.1990) (actual management unnecessary for secured creditor liability) *with In re Bergsoe Metal Corp.,* 910 F.2d 668, 672 (9th Cir.1990) ("[T]here must be some actual management of the .facility before a secured creditor will [be liable under CERCLA]."). Moreover, AS 46.03.822(a) differs from its federal counterpart in the way it describes owner liability. *Compare* AS 46.03.822(a)(2) (imposing liability on "the owner ... of a ... facility, from which there *is* a release ... of a hazardous substance") *with* 42 U.S.C. § 9607(a)(1) (imposing liability on "the owner ... of a ... facility"). Alaska's law appears to focus on the owner at the time of the release, rather than on subsequent owners.

be borne by all potentially responsible parties equally.

This argument seems to assume that courts cannot distinguish among potentially responsible parties to avoid inequitable results. But federal case law shows that courts can. In *Rumpke of Indiana, Inc. v. Cummins Engine Co.*, the Seventh Circuit Court of Appeals found that when a potentially responsible party sues for direct damages under the federal counterparts to subsections .822(a) and (j), the federal statutes allow the claim, but leave room for equitable distinctions upon conclusion of the litigation.[20] Thus, the court approved a direct action for joint and several liability by Rumpke—a potentially responsible party that denied actual responsibility for the contamination:

> [W]e see nothing in the language of § 107(a) [the subsection .822(a) analog] that would make it unavailable to a party suing to recover for direct injury to its own land, under circumstances where it is not trying to apportion costs (*i.e.*, where it is seeking to recover on a direct liability theory, rather than trying to divide up its own liability for someone else's injuries among other potentially responsible parties).[21]

But the court went on to observe: "If the facts show, contrary to Rumpke's protestations, that it was partially responsible for the mess ..., it can proceed only under § 113(f)(1) [the subsection .822(j) analog] in a suit for contribution."[22]

We agree with *Rumpke* that the possibility of inequitable results need not bar a potentially responsible party who denies responsibility from pursuing a direct cause of action for joint and several strict liability against other potentially responsible parties. Insofar as a plaintiff is an "innocent" potentially responsible party, that is, one who ultimately would not be liable for contribution, that plaintiff should recover jointly and severally. On the other hand, if a plaintiff ends up being among those responsible for the damage, the court may recast the direct claim as a claim for contribution upon conclusion of the litigation.

### C. Alaska's Statute of Limitations Applies to Actions Under Subsection .822(a).

The defendants contend that FDIC's action is barred by the statute of limitations. FDIC responds that subsection .822(a) precludes a statute of limitations defense.[23] In advancing this argument, FDIC points to the opening language of AS 46.03.822(a):

> *Notwithstanding any other provision or rule of law and subject only to the defenses set out in (b) of this section, the exception set out in (i) of this section, the exception set out in AS 09.65.240, and the limitation on liability provided under AS 46.03.825, the following persons are strictly liable, jointly and severally, for damages [and*

---

**20.** 107 F.3d 1235, 1240–42 (7th Cir.1997).

**21.** *Id.* at 1240.

**22.** *Id.* at 1242 (citing *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761 (7th Cir.1994)). More recently, other federal courts have similarly allowed CERCLA's direct cost-recovery action to be recast as an action for contribution when brought by a potentially responsible party who is ultimately determined not to be "innocent." *See, e.g., Pinal Creek Group v. Newmont Mining Corp.*., 118 F.3d 1298 (9th Cir.1997). The *Pinal* court found that CERCLA's analog to subsection .822(a) placed cleanup responsibility on the plaintiff Pinal Group because it was a potentially responsible party. At the same time, Pinal Group was entitled to recover from other potentially responsible parties for their share of the cleanup costs under CERCLA's subsection .822(j) analog. The court found that "this duality is best implemented by permitting a [potentially responsible party] who has incurred cleanup costs to

assert only a contribution claim against other [potentially responsible parties]." *Id.* at 1301.

**23.** The defendants assert, without elaboration, that this case is governed by AS 09.10.070(a), which establishes a two-year limit for "an action ... upon a liability created by statute." But it seems that this case might alternatively be governed by AS 09.10.050, which specifies a six-year limit for "an action for waste or trespass upon real property." Yet the relevant portion of the federal court's certification order only asks us to address FDIC's claim that no statute of limitations defense is available for a direct cause of action under AS 46.03.822(a). The question of which statute applies has not been adequately briefed, and the facts recited in the federal court's certification order suggest that the point may be time-barred under any applicable limit. Given these circumstances, we decline to consider which statute of limitations provision would govern FDIC's direct cause of action.

other costs associated with hazardous substance spills].[24]

Asserting that this provision's "notwithstanding" phrase plainly excludes all "defenses" to a subsection .822(a) action except those listed in subsection .822(b), FDIC argues that the provision's plain meaning precludes a statute of limitations defense.

We reject FDIC's plain meaning argument, for, as we explain below, FDIC's literal reading of the "notwithstanding" phrase strains common sense, is contextually implausible, and is at odds with legislative history.

▋ "[T]he threshold question in ascertaining the correct interpretation of a statute is whether the language of the statute is clear or arguably ambiguous."[25] Here, subsection .822(a)'s "notwithstanding" phrase's meaning may indeed seem clear and unambiguous. But " 'words are necessarily inexact and ambiguity is a relative concept.' "[26] Hence, even when a statute's language meaning seems plain on its face, ambiguity may arise if applying that meaning would yield anomalous consequences.[27]

FDIC's proposal to enforce subsection .822(a)'s literal meaning by categorically barring all "defenses" except those listed in subsection .822(b) would have the nonsensical effect of eliminating a host of generally available "defenses" serving vital purposes wholly unrelated to the elements or underlying purposes of a direct action arising under subsection .822(a). If enforced literally, for instance, the "notwithstanding" phrase would bar a defendant who had previously settled and paid a claim from defending on the basis of accord and satisfaction. A defendant who had already prevailed in an identical action by the same plaintiff could not raise the defense of res judicata. A defendant sued by a plaintiff who lacked an interest would be forbidden to claim lack of standing; one sued by a minor could not assert the plaintiff's lack of capacity; and one subjected to a claim without service of process could not raise lack of personal jurisdiction as a defense. The anomalies—all unavoidable consequences of adopting FDIC's proposed "plain meaning"—cast ambiguity on the seemingly clear language of subsection .822(a)'s "notwithstanding" provision.[28]

▋ Moreover, because "plain meaning" cannot exist in a vacuum, ambiguity is necessarily a creature of context. "As the Supreme Court has stated, 'in ascertaining the plain meaning of [a] statute, the court must look to the particular language at issue, as well as the language and design of the statute as a whole.' "[29] And "[w]hen a statute or regulation is part of a larger framework or regulatory scheme, even a seemingly unambiguous statute must be interpreted in light of the other portions of the regulatory whole."[30]

---

24. AS 46.03.822(a) (emphasis added).

25. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 293 n. 4, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988).

26. *State v. Alex et al.*, 646 P.2d 203, 208–09 n. 4 (Alaska 1982) (quoting *United States v. United States Steel Corp.*, 482 F.2d 439, 444 (7th Cir. 1973) and adopting a sliding scale approach to statutory interpretation).

27. Thus, courts adhering to the "plain meaning" rule of statutory interpretation commonly define the rule to apply only "where language of a statute is clear and construction according to its terms does not lead to absurd consequences." *North Slope Borough v. Sohio Petroleum Corp.*, 585 P.2d 534, 540 n. 7 (Alaska 1978).

28. At least one federal court interpreting CERCLA has recently suggested that the "notwithstanding" language in the federal statute should not be interpreted to bar defendants from asserting res judicata, collateral estoppel, accord and satisfaction, or statutes of limitations, because such an interpretation would yield "absurd results that Congress could not have intended." *See Town of Munster, Indiana v. Sherwin–Williams Co., Inc.*, 27 F.3d 1268, 1271–72 (7th Cir.1994); *cf. Alaska Sport Fishing Ass'n v. Exxon Corp.*, 34 F.3d 769, 771–74 (9th Cir.1994) (affirming dismissal of section .822 claim on the ground of res judicata without expressly considering the "notwithstanding" language).

29. *Homer Elec. Ass'n v. Towsley*, 841 P.2d 1042, 1048 (Alaska 1992) (Compton, J., dissenting) (quoting *K Mart Corp.*, 486 U.S. at 291, 108 S.Ct. 1811); *see also Nash v. State, Commercial Fisheries Entry Comm'n*, 679 P.2d 477, 478 (Alaska 1984).

30. *Millman v. State*, 841 P.2d 190, 194 (Alaska App.1992).

Considered in context with other relevant provisions, subsection .822(a)'s meaning is hardly plain. The "notwithstanding" phrase must initially be read together with other parts of section .822 to which subsection .822(a) specifically refers: subsection .822(b)'s list of "defenses" and the "exception" created in subsection .822(i).[31] The relevant language is as follows:

(b) In an action to recover damages or costs, a person otherwise liable under this section is relieved from liability under this section if the person proves

(1) that the release or threatened release of the hazardous substance to which the damages relate occurred solely as a result of

(A) an act of war;

(B) except as provided under AS 46.03.823(c) and 46.03.825(d), an intentional or negligent act or omission of a third party, other than a party or its agents in privity of contract with, or employed by, the person, and that the person

(i) exercised due care with respect to the hazardous substance; and

(ii) took reasonable precautions against the act or omission of the third party and against the consequences of the act or omission; or

(C) an act of God; and

(2) in relation to (1)(B) or (C) of this subsection, that the person [discovered the release and began containment and clean up within a reasonable period of time].

. . . .

(i) In an action to recover damages and costs, a person otherwise jointly and severally liable under this section is relieved of joint liability and is liable severally for damages and costs attributable to that person if the person proves that

(1) the harm caused by the release or threatened release is divisible; and

(2) there is a reasonable basis for apportionment of costs and damages to that person.[32]

As can be seen, subsection .822(b) creates three defenses to subsection .822(a)'s strict liability scheme: an act of God, an act of war, or an unavoidable act of a third party. Each of these listed "defenses" centers on causation; each is triggered by the intervention of an outside actor, to which the law attributes the hazardous release, away from the original defendant. Hence, this specific category of defenses ameliorates the otherwise harsh effects of strict liability. So too, subsection (i) creates a specific exception that, when triggered by particular circumstances justifying the apportionment of partial responsibility to an outside actor or third party, ameliorates the harsh effects of joint and several liability.

The narrow focus of these defenses has significance in its own right, because "[w]here ... specific words follow[ ] general ones, [the statutory interpretation doctrine of *ejusdem generis*] restricts application of the general term to things that are similar to those enumerated."[33] As applied to the statutory phrase at issue, then—"notwithstanding any other provision or rule of law and subject only to the defenses set out in (b) of this section, the exception set out in (i) of this section"—this interpretive canon strongly suggests that the terms "defenses" and "exception" refer not to the entire universe of potential general defenses, but to provisions and rules outside the original legislation that specifically mitigate the effects of joint and several liability.

A companion provision of Alaska's 1989 hazardous substances legislation lends fur-

**31.** Subsection .822(a)'s "notwithstanding" phrase currently refers to two other provisions: "the exception set out in AS 09.65.240, and the limitation on liability provided under AS 46.03.825." *See* AS 46.03.822(a). But neither of these references appeared in the originally enacted version of subsection .822(a). *See* Ch. 39, § 2, SLA 1989. Since both references were added after the original enactment of subsection .822(a), they are not relevant to establish the intent of the legislature that originally enacted the statute.

**32.** AS 46.03.822(b) & (i).

**33.** 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.17 (6th ed.2000); *see State v. First Nat'l Bank of Anchorage,* 660 P.2d 406, 412–13 (Alaska 1982) (applying this doctrine).

ther credence to this reading. The statute immediately following subsection .822—AS 46.03.823—expressly creates a partial exception to strict liability for "hazardous substance response action contractors" (cleanup contractors), making them liable for hazardous releases only on the basis of negligence.[34] This provision certainly qualifies as a "defense" to subsection .822(a)'s strict liability provision-at least in the broad sense of "defense" that FDIC urges us to adopt insofar as it relates to the statute of limitations. Yet because this defense is not mentioned in subsection .822(a), it necessarily conflicts with FDIC's proposed "plain meaning" of subsection .822(a)'s "notwithstanding" phrase: according to FDIC, the phrase's categorical preclusion of all conceivable defenses except those set out in section .822—subsections .822(b) and (i).

■ To apply FDIC's plain meaning of subsection .822(a), then, would nullify the section .823 defense, rendering the provision entirely superfluous. This, in turn would clash with the rule of construction holding that, as a general rule, a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."[35]

Legislation outside AS 46.03 reinforces the uncertainty generated by section .823. Just as subsection .822(a)'s "notwithstanding" phrase must be considered in context with the hazardous substances act as a whole, so too other relevant laws must be considered, for "a seemingly unambiguous statute [may be] restricted by another act or where it must be considered in pari materia with another act."[36] In this regard, the comprehensive regime of statutes of limitations listed in AS 09.10 is particularly relevant,[37] because, as Laidlaw correctly observes, "if, as FDIC suggests, § .822(a) has no statute of limitations whatsoever, it appears to be the only cause of action in Alaska with this distinction."[38]

The final factor to consider in determining subsection .822(a)'s meaning is its legislative history. In our view, this factor further indicates that the legislature did not intend to exclude the statute of limitations as an available "defense" to a private cost recovery action. In 1989 the legislature amended section .822, using the federal CERCLA statute as a pattern.[39] Congress originally passed CERCLA in 1980, including the defense-limiting "notwithstanding" language that appears in subsection .822(a).[40] When first enacted, CERCLA incorporated a three-year

**34.** As originally enacted by chapter 39, § 3, SLA 1989, section .823 provided, in relevant part: (a) A person who is a response action contractor with respect to a release or threatened release of a hazardous substance is not civilly liable for injuries, costs, damages, expenses, or other liability that results from the release or threatened release unless the release or threatened release is caused by an act or omission of the response action contractor that is negligent or grossly negligent or constitutes intentional misconduct. To show negligence by a response action contractor, a claimant must show that the acts or omissions of the contractor under the response action contract were not in accordance with generally accepted professional standards and practices at the time the response action services were performed. (b) The liability limitation under (a) of this section does not apply to a response action contractor who would otherwise be strictly liable under this section.

**35.** *Alascom, Inc. v. North Slope Borough Bd. of Equalization,* 659 P.2d 1175, 1178 n. 5 (Alaska 1983) (quoting 2A C. Sands, *Statutes and Statutory Construction* § 46.06 (4th ed.1973)).

**36.** *Hafling v. Inlandboatmen's Union of Pacific,* 585 P.2d 870, 872 (Alaska 1978); *see also Anderson v. Anderson,* 736 P.2d 320, 321 (Alaska 1987) (seemingly unambiguous provision of Exemptions Act affected by Alaska Limited Entry Act).

**37.** AS 09.10.010 provides: "A person may not commence a civil action except within the periods prescribed in this chapter after the cause of action has accrued, except when, in special cases, a different limitation is prescribed by statute." AS 09.10.100 provides: "An action for a cause not otherwise provided. for may be commenced within ten years after the cause of action has accrued."

**38.** *See generally* AS 09.10.010—AS 09.10.100.

**39.** *See supra* note 8 and accompanying text.

**40.** *See* Comprehensive Environmental Response, Compensation & Liability Act of 1980, Pub.L. No. 96–510, Title I, § 107, 94 Stat. 2767, 2781 (1980).

statute for damages actions.[41] But two federal trial courts ruled that this statute of limitations did not apply to cost recovery actions under 42 U.S.C. § 9607—the CERCLA analog to subsection .822(a).[42]

In 1986, evidently responding to these rulings, Congress added statutes of limitations specifically covering CERCLA's counterparts to subsections .822(a) and (j).[43] Congress codified these new statutes as separate provisions within CERCLA, and did not amend CERCLA's "notwithstanding" language to mention them as "defenses" to a cost recovery action under CERCLA.[44] Obviously, then, Congress did not consider these statutes of limitations to be included among the kinds of "defenses" that were limited by CERCLA's "notwithstanding" provision—a provision directly corresponding to subsection .822(a).

When the 1989 Alaska legislature revised section .822 by incorporating many features of CERCLA,[45] it omitted CERCLA's internal statutes of limitations. FDIC argues that this omission evinces the legislature's intent to withdraw any statute of limitations defense. But the defendants respond that the Alaska legislature's omission merely reflects its awareness that, unlike federal law, Alaska law already incorporated general statutes of limitations outside its hazardous substances act that would govern a direct action brought under subsection .822(a).

The defendants' view is more plausible than FDIC's. As pointed out above, it is apparent that Congress considered CERCLA's internal statute of limitations to lie outside the sphere of "defenses" described by CERCLA's "notwithstanding" provision. If we accepted FDIC's proposed view of legislative intent, then, we would have to conclude that the Alaska legislature meant to give the "notwithstanding" language imported from CERCLA more significance in subsection .822(a) than Congress gave it in the federal context. Since no legislative history supports this interpretation, there is no reason to suppose that the Alaska legislature intended subsection .822(a) to abrogate Alaska's general statutes of limitations.

In sum, we conclude that the limiting language of subsection .822(a) does not preclude affirmative defenses, like the defense of statute of limitations, that have no inherent relation to subsection .822(a)'s imposition of joint and several strict liability for release of hazardous substances.

D. *An Action for Contribution Under Subsection .822(j) May Be Filed When a Subsection .822(a) Action Is Brought but "Accrues" for Purposes of the Statute of Limitations When Judgment Is Entered or Settlement Is Reached.*

One of the certified questions before us is when a cause of action for contribution "accrues" under subsection .822(j). In 1989, when the legislature amended subsection .822(a) to mirror CERCLA, it also enacted a new subsection, AS 46.03.822(j), that gave defendants an action for contribution:

> *A person may seek contribution from any other person who is liable under (a) of this section during or after a civil action under (a) of this section.* ... In resolving claims for contribution under this section, the court may allocate damages and costs among liable parties using equitable factors determined to be appropriate by the court. This subsection does not diminish the right of a person to bring an action for contribution in the absence of a civil action under (a) of this section.[46]

The statutory language is clear that any party named in a direct subsection .822(a) action may commence an action for contribution at any time "during or after" the direct

---

**41.** *See* 42 U.S.C. § 9612(d) (1994).

**42.** *See United States v. Dickerson,* 640 F.Supp. 448, 450–51 (D.Md.1986); *United States v. Mottolo,* 605 F.Supp. 898, 901–10 (D.N.H.1985).

**43.** *See* Pub.L. No. 99–499, § 113(b), 100 Stat. 1613, 1647 (1986).

**44.** *See* 42 U.S.C. § 9613(g) (1994). CERCLA's analog to AS 46.03.822(a) appears at 42 U.S.C. § 9607(a).

**45.** *See supra* note 8 and accompanying text.

**46.** Ch. 39, § 2, SLA 1989.

action.[47] We nevertheless conclude that even though subsection .822(j) allows a contribution action to be brought while a subsection .822(a) action is still in progress, the contribution action does not "accrue" for purposes of the statute of limitations until the subsection .822(a) action concludes.

 Under CERCLA, an action for contribution accrues according to a contribution-specific statute of limitations, 42 U.S.C. § 9613(g)(3). Alaska has no analog to this provision on its books. Because the legislature unreservedly specified that contribution actions may be brought after a subsection .822(a) action concludes, and since an action under the subsection .822(a) could conceivably remain pending for many years after its inception, the statute of limitations on such actions cannot realistically begin to run upon commencement of the action under subsection .822(a).[48]

Moreover, interpreting subsection .822(j) to authorize a contribution action accruing upon or after judgment comports with general contribution case law elsewhere,[49] as well as with our own case law governing contribution in other contexts. For example, in *Providence Washington Insurance Co. of Alaska v. McGee* we recognized "that a claim for contribution is substantively separate from the underlying tort and does not arise until the contribution claimant has paid more than his or her proportionate share of the total claim." [50]

In the absence of statutory guidance other than the language of subsection .822(j), and because subsection .822(j) specifically authorizes an action for contribution to be brought "during or after" a direct action under subsection .822(a), we conclude that a contribution action under subsection .822(j) should not accrue for statute of limitations purposes until the direct cost recovery ends, either by judgment, settlement, or the conclusion of an administrative action.[51]

---

47. Conversely, subsection .822(j)'s "during or after" language strongly suggests that a party has no right to seek contribution *before* an action has been commenced under subsection .822(a). Yet subsection .822(j) also provides that "this subsection does not diminish the right of a person to bring an action for contribution in the absence of a civil action under (a) of this section." In light of our decision that subsection .822(a) creates a private cause of action, these provisions are not contradictory. In the absence of a third-party claim under subsection .822(a), a potentially responsible party is free to bring a private action under subsection .822(a) against other potentially responsible parties and, in so doing, may seek or ultimately be limited to apportioned damages under subsection .822(j). *See, e.g., Pinal Creek Group v. Newmont Mining Corp.*, 118 F.3d 1298, 1301 (9th Cir.1997). While this kind of anticipatory action might plausibly be characterized as a claim for contribution under subsection .822(j), because it derives from subsection .822(a)'s creation of a private right of action, the anticipatory contribution action must accrue with the related subsection .822(a) action and be governed by its statute of limitations.

48. In this regard, we believe that subsection .822(j)'s language allowing potentially responsible parties to assert contribution claims "during" a subsection .822(a) action must be read to extend to actions prosecuted either in court or through administrative proceedings. If subsection .822(j) did not apply to parties who became subject to DEC administrative compliance actions, the benefit of a contribution action would

accrue only to those who, through their recalcitrance, forced DEC to court. We do not believe that the legislature intended to force such cases into court. We note, however, that before the state's administrative process could qualify as an action, it would have to have the formal attributes of an administrative proceeding, including "a complaint-like pleading, which in turn set[s] in motion a formal process of dispute resolution." *Koss v. Koss*, 981 P.2d 106, 108 (Alaska 1999); *see also Agen v. State, CSED*, 945 P.2d 1215, 1219 (Alaska 1997); *cf. Hickel v. Halford*, 872 P.2d 171, 176 (Alaska 1994) (listing a formal charging document that triggers a formal mechanism for dispute resolution as indicia of an agency "proceeding").

49. *See* Maurice T. Brunner, Annotation, *When Statute of Limitations Commences to Run Against Claim for Contribution or Indemnity Based on Tort*, 57 A.L.R.3d 867, 912–13 (1974).

50. 764 P.2d 712, 715 (Alaska 1988); *see also Alaska General Alarm, Inc. v. Grinnell*, 1 P.3d 98, 106–07 (Alaska 2000).

51. In our view, the rule we adopted in *Providence Washington Insurance Co. of Alaska v. McGee* should generally govern the date of accrual when a party who has paid damages assessed jointly and severally under subsection .822(a) files a contribution action to recoup the disproportionate payment. In at least one situation, however, reliance on the *Providence Washington* rule may not be warranted. When a party who has not been forced to pay an award or make cleanup

### E. Nuisance and Trespass Actions Are Subject to Statutes of Limitations and the Discovery Rule.

Finally, we consider whether hazardous substance contamination can escape the statute of limitations by being characterized as a continuing nuisance or trespass. FDIC maintains that because the contamination of the Soldotna property "continued over time, and continue[s] up to the present time," no statute of limitations bars its claims for nuisance and trespass. To support this argument, it relies on our ruling in *Wood v. Alm.*[52]

We are not persuaded that *Wood* is controlling. In *Wood,* we let stand the superior court's ruling that the defendant's failure to prevent the flooding of the Woods' property was a continuing nuisance that should be abated.[53] FDIC reads that case as describing a situation analogous to this case. But in *Wood,* the continuing nuisance was caused by a faulty dike for which the defendants were responsible.[54] While damage did occur soon after the dike began to leak, we recognized that compensation for that damage was time barred.[55] Nevertheless, the defendants were under a continuing obligation to prevent the inundation of the Woods' land, which they continuously failed to do; their leaky dike allowed water to seep onto the Woods' property up to the day the suit was filed.[56]

In contrast, the defendants here are not exacerbating the contamination that they allegedly caused during the late 1980s. And since they have lost their connection to the land, they cannot be characterized as maintaining an ongoing nuisance. Thus, we do not see how the contamination in this case differs from the harm ordinarily at issue in cases involving torts of a non-continuing nature, where discrete wrongful acts often have lasting consequences.

Insofar as there is a difference that relates to statutes of limitations, it is that injuries from seeping pollutants may be difficult to discover. That characteristic, however, does not militate in favor of describing the defendants' alleged actions as a continuing nuisance or trespass. Rather, the discovery rule adequately addresses this problem by delaying a cause of action's accrual until the plaintiff is aware, or reasonably should be aware, of its existence.[57]

Here, given the parties' briefing, the undisputed facts discussed in the federal court's certification request, and the available record, we conclude that FDIC's allegations do not lend themselves to being framed as a continuing trespass or nuisance.[58]

## IV. CONCLUSION

In sum, we answer the certified questions as follows:

1. A statute of limitations defense is available for a direct cause of action under AS 46.03.822(a).

2. Alaska Statute 46.03.822(a) creates a private cause of action imposing joint and several strict liability.

---

efforts under subsection .822(a) files a contribution action to apportion liability for the damages, the contribution action should be treated as accruing at the time of judgment on the subsection .822(a) action. Applying the *Providence Washington* rule to such cases would encourage subsection .822(a) judgment debtors to delay payment or cost recovery efforts, since any delay would be essentially cost-free and they could always trigger a new period for filing a contribution action by making a small payment on the judgment. In these situations and in other exceptional cases, subsection .822(j)'s express grant of discretion to consider "equitable factors determined to be appropriate by the court" will, we believe, empower trial courts to treat the contribution action as accruing upon entry of the subsection .822(a) judgment.

**52.** 516 P.2d 137, 142 (Alaska 1973).

**53.** *See id.* at 141–42.

**54.** *See id.*

**55.** *See id.*

**56.** *See id.* (indicating that the superior court judge viewed the unrepaired conditions around the Woods' property).

**57.** *See Cameron v. State,* 822 P.2d 1362, 1365–68 (Alaska 1991) (laying out the discovery rule and its purpose).

**58.** For the reasons that we advanced in discussing the availability of a statute of limitations defense to direct actions under subsection .822(a), *see supra* Part III.C, we need not consider what statute of limitations applies to FDIC's trespass claim.

3. A cause of action for contribution under AS 46.03.822(j) may be brought during the pendency of a direct action under subsection .822(a) but does not accrue for purposes of the statute of limitations until the direct action concludes.

4. Continuing trespass and nuisance claims for environmental contamination cannot be brought outside the limitations period under the undisputed circumstances presented here.