**Leanne WACKER, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–9617.

Court of Appeals of Alaska.

Nov. 30, 2007.

Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Blair M. Christensen, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

STEWART, Judge.

Leanne Wacker was convicted of third-degree assault, driving under the influence, and failure to render assistance to an injured person.[1]

In this appeal, Wacker argues that the trial court erred in failing to issue a curative instruction after the prosecutor made a comment in closing arguments that Wacker argues improperly shifted the burden to present evidence and witnesses. We hold that the comment in question did not constitute an improper shift of the burden, so no curative instruction was necessary.

Wacker also argues that the trial court should have admitted certain evidence of habit to prove conduct in conformity with that habit under Alaska Evidence Rule 406. Wacker sought to admit evidence that her sister repeatedly drove while intoxicated to prove that Wacker was not the driver. But we conclude, as did the trial court, that the offered evidence was character evidence barred by Evidence Rule 404(b).

We therefore affirm Wacker's convictions.

### Background facts and proceedings

On the night of February 20, 2005, Leanne Wacker had plans to go out drinking in Anchorage with a friend, Danielle Gregory, and Wacker's sister, Brenda Boone. After obtaining alcohol from two liquor stores and Wacker's home, Wacker, Boone, and Gregory went to Boone's trailer, and spent several hours there drinking.

After midnight, Boone, Gregory, and Wacker decided to go out to some bars. The three women, with Boone driving Wacker's car, stopped briefly at two bars downtown; Boone went inside each of the bars while Gregory and Wacker waited in the car. The women then went to Chilkoot Charlie's and spent thirty to sixty minutes there, during which time Wacker had two more drinks and Boone had three or four more drinks. After about an hour at Chilkoot Charlie's, a bouncer informed Wacker that Boone had to leave the bar because she was too intoxicated. Boone, Wacker, and Gregory left the bar and got in Wacker's car.

On the way home, Boone and Wacker dropped Gregory off at her apartment building. After leaving Gregory's apartment building, Wacker's vehicle was involved in an accident. As Wacker's vehicle was heading south on C Street crossing International Airport Road, it ran a red light and struck another vehicle. The driver of the other vehicle, Angelo Ofiana, suffered some physical pain as a result of the crash, and his car was totaled.

1. AS 11.41.220(a)(1)(B), AS 28.35.030(a), and AS 28.35.060(c), respectively.

The identity of the driver at the time of the accident was a contested issue at trial. Wacker testified that Boone, her sister, was driving her car at all times after leaving Chilkoot Charlie's. Wacker testified that she wanted to call a cab outside Chilkoot Charlie's, but that Boone stated she was fine to drive and insisted on driving Wacker's car home. Wacker and Gregory both testified that Boone drove from Chilkoot Charlie's to Gregory's building, and that Boone was still driving when she and Wacker drove away from Gregory's building. Wacker further stated that after her car came to a rest following the accident, Boone climbed from the driver's seat into the back seat. Wacker testified that Boone said "I can't get another DUI," and asked Wacker to tell the police that she (Wacker) was driving.

A taxi driver, Lampros Molfetas, was driving behind Ofiana's vehicle on International Airport Road and witnessed the accident. Molfetas testified at trial that Wacker was the driver of the car at the time it struck Ofiana's vehicle. When Wacker's car did not stop after crashing into the other vehicle, Molfetas followed the car and immediately called 911. The car drove about 150 yards past the scene of the crash and then stopped, and Molfetas stopped his taxi directly behind it. He testified at trial that Wacker exited the car from the driver's side door and Boone exited from the passenger's side shortly after the car came to a rest. After exiting the vehicle, Boone told Molfetas that a third person had been driving the car and had fled the scene after the accident. But Molfetas testified that he watched the car constantly after it hit Ofiana's vehicle, continued down C Street, and eventually slowed to a stop, and that he did not see the passengers switch seats or see any person other than Wacker and Boone exit the vehicle. He testified that he was "[o]ne hundred and ten percent" certain that Wacker was the driver of the car at the time of the accident.

When police arrived at the scene, Molfetas told them that Wacker was the driver of the vehicle. A police officer conducted field sobriety tests on Wacker, and she failed all of them and was arrested. At the police station, a breath alcohol test determined Wacker's blood alcohol content to be .129.

Wacker was charged with third-degree assault, driving while under the influence, and failure to render assistance to an injured person after an accident. At trial, Wacker's defense was based on the argument that Boone was driving her vehicle at the time the accident occurred. Boone, however, did not testify at trial.

A defense investigator, Kim McGee, testified about the efforts made to contact Boone before trial. She testified that she tried to call Boone several times, but when McGee identified herself, Boone hung up on her. McGee also tried to locate Boone in person at several different addresses, without success. Eventually, only a few days before trial, McGee was successful in speaking with Boone on the telephone and serving her with a subpoena to appear in court. Boone failed to appear in court on the date specified in the subpoena, and did not testify at Wacker's trial.

In contrast with McGee's testimony regarding her difficulty in contacting Boone, Wacker testified that after the accident but before trial Boone "[came] over [to Wacker's apartment] all the time" and frequently called Wacker.

Wacker argued that the jury should infer from Boone's failure to appear that Boone was driving at the time of the accident and knew she was responsible, but did not want to admit this in court.

During trial, Wacker attempted to introduce evidence that Boone repeatedly would drink and drive, but Superior Court Judge Larry D. Card ruled this evidence inadmissible. Judge Card concluded that it was propensity evidence barred by Evidence Rule 404(b), not evidence of a regular habit admissible under Evidence Rule 406.

Wacker also objected to a comment made by the prosecutor during the State's rebuttal closing argument. Wacker argues that the comment improperly shifted the burden to the defense to present evidence and witnesses. Judge Card ruled that the comment did not improperly shift this burden to Wacker. He also rejected two jury instructions

proposed by Wacker, ruling that the instructions misstated the law and were duplicative of existing instructions.

The jury found Wacker guilty of all counts. Wacker appeals her convictions.

## Discussion

*Wacker's argument regarding statements made by the prosecutor during closing arguments*

■ On appeal, Wacker argues that the prosecutor's comments made during the State's closing argument improperly shifted the burden of proof to the defendant, and that the trial court erred in denying Wacker's request for a curative instruction.

During closing argument, the defense attorney argued, *inter alia*, that the jury should infer from Boone's failure to answer the subpoena that Boone was guilty. The attorney stated:

> We know [Boone is] dishonest.... We know that [Boone] doesn't follow court orders. She was subpoenaed to be here. She isn't here. She never did come in. We know she has a guilty conscience, won't speak to her family, won't speak to Ms. McGee back there, my investigator, when she tried to talk to her. Won't come to court when she's told to do so. And she's hiding from the troopers and from Ms. McGee. Why is that, if she wasn't driving, [if] she was in the passenger seat? She's got a guilty conscience, ladies and gentlemen, that's why she's not here despite our best efforts to bring her in and show you.

In the State's rebuttal argument, the prosecutor made the following comments:

> There's also been discussion about who really has access to Ms. Boone. You've heard testimony that Ms. Boone calls the defendant regularly. She leaves her messages. Before [Wacker] moved in September ... [Boone] was in and out of [Wacker's] house. So I'll ask you, who has access to Ms. Boone if they want her here?

Wacker objected to this comment by the State, and Judge Card overruled the objection.

After the State finished its rebuttal argument, Wacker again objected to the prosecutor's comment, arguing that it improperly shifted to Wacker the burden to present evidence. The State responded that the comment did not imply that it was Wacker's responsibility to produce Boone, but merely countered Wacker's argument that Boone was refusing to contact her family and was "making herself unavailable for a particular purpose."

Judge Card again overruled Wacker's objection, concluding that the prosecutor's comment was related to the evidence and facts of the case, and did not improperly shift the burden to the defendant to produce evidence or witnesses. He found that Wacker herself raised the issue of her sister's failure to show up despite constant contact with the defendant outside the courtroom. The judge also noted his frequent reminders to the jurors that it is the State's burden to produce evidence and prove the defendant's guilt beyond a reasonable doubt.

Despite these conclusions, Judge Card offered to consider, in addition to the basic instructions that addressed the State's burden of proof, a jury instruction addressing this particular situation, explicitly stating that the defendant never has the burden to call any witness or produce any evidence. Wacker proposed the following jury instruction:

> In her closing argument, the prosecutor suggested that Ms. Wacker should bear responsibility for bringing a witness to court. That suggestion was wrong.
>
> The burden of proof and of bringing witnesses to court always lies with the prosecution, and not with the defendant.

Judge Card rejected this instruction, finding that the second paragraph improperly stated the law: although the burden of proving each element beyond a reasonable doubt lies with the State, the State does not bear the responsibility of bringing all witnesses (including, for example, witnesses for the defense) to court.

Wacker offered to amend the second paragraph of the instruction to state solely that "the burden of proof beyond a reasonable

doubt always lies with the prosecution and not with the defendant." Judge Card again rejected the proposed instruction, finding that the existing instructions already provided a clear statement of the law on this point.

Wacker argues that the prosecutor's comment to the jury—"who has access to Ms. Boone if they want her here?"—improperly shifted the burden of proof, or the burden of producing witnesses, to Wacker. The State argues that the prosecutor's comment should be interpreted as "argu[ing] that there were several other reasonable explanations as to why Boone may have avoided involvement in the court proceedings, aside from Wacker's lone explanation of a guilty conscience."

In *McCurry v. State*,[2] the Alaska Supreme Court acknowledged that it is ordinarily "improper [for the prosecutor] to comment on the failure of the defendant to call particular witnesses."[3] This rule is meant to address situations in which the prosecutor is asking the jury to draw an adverse inference against the defendant based on the defendant's failure to call certain witnesses.[4]

This case presents a different situation. At trial, Wacker presented evidence on the unavailability of Boone as a witness, primarily through a defense investigator who testified about the extensive efforts made by the defense to bring Boone in to testify. Wacker's attorney then argued that the jury should draw an inference, favorable to the defense, from Boone's failure to testify—namely, an inference that Boone was the one who was responsible for the crime committed.

Viewed in context, the prosecutor's comments in closing argument merely pointed out that there was also evidence contradicting Wacker's assertion that Boone had failed to appear despite Wacker's best efforts—namely, the evidence that Wacker had continued to have contact with Boone throughout the time leading up to trial. We agree with the trial court that the prosecutor's statements are properly viewed as a com-

ment on the evidence presented in the case, not a comment that improperly shifted the burden to produce evidence or witnesses to the defendant.

Since the prosecutor did not improperly shift the burden of presenting evidence or witnesses to the defendant, it was not necessary for the trial court to provide the jury with a curative instruction addressing this situation. An additional instruction was particularly unnecessary in light of the existing jury instructions, which explained the State's burden of proof and stated that, the defendant never has the burden to call any witness or produce any evidence.

*Wacker's argument regarding the admissibility of evidence of Boone's history of drinking and driving*

■ Wacker argues that the trial court erred in excluding evidence of Boone's history of drinking and driving.

At trial, Wacker attempted to introduce evidence that Boone would frequently drive while intoxicated. Wacker made an oral offer of proof, stating that she had several witnesses who would testify about Boone's practice of "driving while she'd been drinking." She argued that the evidence was admissible as habit evidence under Evidence Rule 406, and as evidence of prior bad acts to prove identity (*i.e.*, to prove that Boone was the driver of the vehicle) under Rule 404(b)(1). Judge Card ruled that, based on Wacker's offer of proof, Boone's history of drinking and driving did not constitute habit under Rule 406, and was too general to establish Boone's identity as the driver.

After Judge Card's ruling, Wacker renewed her application to allow evidence of Boone's repeated acts of driving after she had been drinking. Wacker made an offer of proof through testimony (given outside the presence of the jury) from another sister, Cathlee Bantasari. Bantasari testified that Boone drank and did things that she should not be doing under the influence of alcohol,

**2.** 538 P.2d 100 (Alaska 1975), *overruled on other grounds by Howe v. State,* 589 P.2d 421 (Alaska 1979).

**3.** *Id.* at 103–04.

**4.** *See Gass v. United States,* 416 F.2d 767, 775 (D.C.Cir.1969).

such as driving or giving insulin shots to her son. Bantasari stated that before the car accident she saw Boone two or three times a year, but that she had not seen Boone in almost a year at the time of her testimony. Judge Card ruled that Bantasari's testimony on this subject was inadmissible because it was propensity evidence barred by Evidence Rule 404(b), not evidence of a regular habit for purposes of Evidence Rule 406.

Wacker now argues that Judge Card erred in determining that Bantasari's testimony did not constitute evidence of habit under Rule 406.

Alaska Evidence Rule 406 provides that "[e]vidence of the habit of a person ... is relevant to prove that the conduct of the person ... on a particular occasion was in conformity with the habit." Although the term "habit" is not defined in the rule itself, the commentary to Rule 406 defines habit as a "person's regular practice of meeting a particular kind of situation with a specific type of conduct." [5]

■ Wacker argues that "Boone's specific conduct in response to [her need to go somewhere after she had been drinking] was insisting, over objection, that she drive." Wacker avers that Bantasari's testimony would have demonstrated that this "conduct was repeated frequently and consistently." [6] But not all conduct that is repeated frequently and consistently constitutes a habit. A significant factor in the determination of habit "is the degree of volition required for the activity; the more thought and planning required for the act, the less likely it will be found to be a habit; the more reflexive and automatic the conduct, the more likely it will be found to be habit." [7]

Boone's acts of driving when she had too much to drink were volitional decisions on her part, and those acts cannot be said to have been performed out of reflex. We agree with Judge Card that under, these circumstances, the evidence of Boone's drinking and driving constituted evidence of character, inadmissible under Rule 404, not evidence of habit. This decision aligns with a policy of caution in admitting evidence of a pattern of conduct as habit, out of concern that the rule admitting habit evidence will swallow the rule excluding character evidence.[8] Judge Card did not err in ruling the evidence inadmissible under Rule 406.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

**5.** Commentary to Alaska R. Evid. 406 (quoting McCormick on Evidence (2d ed.) § 195, at 462).

**6.** *See id.* ("[T]he more regular the performance of an act, the more likely it is to be regarded as a habit.").

**7.** Stephen A. Saltzburg, Michael M. Martin, & Daniel J. Capra, 2 Federal Rules of Evidence Manual (9th ed.2006), § 406.02[2], at 406–3.

**8.** *See id.*